UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HEATHER MINICK, individually and as surviving spouse of MICHAEL MINICK, and as co-administrator of the Estate of Michael Minick,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, CHRISTOPHER FOSTER, Individually and in his official capacity, MATTHEW BARSHAW, individually and his official capacity; JEFFREY DAVIDSON, individually and his official capacity; MORRIS CRAVEN, individually and in his official capacity,<br><br>    Defendants, | Case No. 3:12-cv-0524<br>Judge Aleta A. Trauger |

## MEMORANDUM

Defendant Metro Nashville has filed Motion to Dismiss (Docket No. 144), to which the plaintiff has filed a Response in opposition (Docket No. 148), and Metro Nashville filed a Reply (Docket No. 152). For the reasons stated herein, the motion will be granted.

## BACKGROUND

The plaintiff, Heather Minick ("Ms. Minick"), is the surviving spouse of the decedent, Michael Minick (hereinafter, "Minick"). In her Amended Complaint, Ms. Minick alleges that Minick was arrested on May 30, 2011 (after being shocked with a stun gun) and transported to Nashville General Hospital under the custody of the Davidson County Sheriff's Office ("DCSO"). At the hospital, Minick was restrained to a bed in a hospital room in the "lock up"

1

area. Defendant DSCO Corporal Christopher Foster was assigned to guard Minick. Ostensibly because Minick was swearing and not staying in his bed, Officer Foster contacted DSCO Corporals Matthew Barshaw, Jeffrey Davidson, and Morris Craven for assistance. Officers Foster, Barshaw, Davidson, and Craven entered the room and allegedly sprayed Minick in the face with chemical spray, forcefully took Minick to the floor, and struck him in the face until Minick stopped breathing, stopped moving, defecated on himself, and began turning blue from asphyxiation. Medical staff responded and restored Minick's heartbeat, but he was left in a coma and died on July 2, 2011 of complications stemming from the incident.

Based on this incident, Ms. Minick asserts claims on behalf of herself, as Minick's surviving spouse, and as the co-administrator of his estate. She asserts (1) § 1983 wrongful death claims against all defendants under the Fourth, Fifth, and Fourteenth Amendments; (2) claims against Metro Nashville under the Tennessee Governmental Tort Liability Act ("TGLTA"), Tenn. Code Ann. § 29-20-205, and (3) a claim against Metro Nashville under Tenn. Code Ann. § 8-8-302, also known as the "Sheriff's Statute." Metro Nashville has moved for dismissal of all claims against it under Fed. R. Civ. P. 12(b)(6).[1]

## RULE 12(B)(6) STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the

---

[1] The remaining defendants are not parties to Metro Nashville's motion.

grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## ANALYSIS

### I. Municipal Liability Claims under § 1983[2]

Under § 1983, a municipality can only be held liable if the plaintiff demonstrates that the alleged federal violation was a direct result of the city's official policy or custom. *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

---

[2] The parties argue about whether the underlying constitutional claims arise under the Fourth, Fifth, or Fourteenth Amendments. *See Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008) ("Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between."); *Burgess v. Fischer*, 735 F.3d 462, 472-74 (6th Cir. 2013) (discussing factors for determining where, with respect to pretrial detainees, Fourth Amendment protection ends and Fourteenth Amendment protections begin). Here, the court need not resolve this issue, because Ms. Minick's allegations concerning the municipal liability claims against Metro Nashville are insufficient to state a claim under § 1983, regardless of the constitutional source for the underlying claims.

693 (1978)); *Regets v. City of Plymouth*, -- F. App'x --, 2014 WL 2596562, at *12 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478. The inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Slusher*, 540 F.3d at 457. To establish deliberate indifference, the plaintiff may show prior instances of unconstitutional conduct demonstrating that the governmental entity has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *Id.*; *see also Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006). In the alternative, where the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is essentially a complete failure to train the police force or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result. *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

Here, Ms. Minick claims that ¶¶ 4.30-4.38 of her Amended Complaint are sufficient to state a claim for municipal liability against Metro Nashville under § 1983. However, the referenced allegations are boilerplate and conclusory and contain no specific factual assertions. In numerous cases, courts (including this one) have found that boilerplate allegations premised on a single incident of alleged police brutality – *i.e.*, the incident that caused the plaintiff's injury

4

– are insufficient to state a municipal liability claim, thereby justifying dismissal under Rule 12(b)(6).[3]  Here, the Amended Complaint does not identify or describe any of Metro Nashville's policies, procedures, practices, or customs relating to training; it does not identify any particular shortcomings in that training or how those shortcomings caused the alleged violation of Minick's rights; and it does not identify any other previous instances of excessive force or similar violations that would have put Metro Nashville on notice of a problem.  *See Okolo*, 892 F. Supp. 2d at 944; *Hutchison*, 685 F. Supp. 2d at 751; *Johnson*, 2010 WL 3619790, at *2-*3.  Accordingly, the court finds that the Amended Complaint does not contain sufficient allegations to state a claim for municipal liability against Metro Nashville.  The court recognizes that

---

[3] *See Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing claims under Rule 12(b)(6) because, "[s]tripped of legal language, Plaintiff's Complaint contains no fact that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department [, . . . and] fails to allude to any incident of brutality other than the one [the plaintiffs] allegedly suffered"); *Johnson v. Gannon*, 2010 WL 1658616, at *4 (M.D. Tenn. Apr. 23, 2010) (dismissing municipal liability claim, where plaintiff made only a "formulaic recitation of the elements" of a failure to train claim") (internal quotations omitted); *Chacon v. Clarksville Police Dep't*, 2012 WL 6699655, at *4 (M.D. Tenn. Dec. 21, 2012); *Johnson v. Metro Gov't of Nashville & Davidson Cnty.*, 2010 WL 3619790, at *2-*3 (M.D. Tenn. Sept. 13, 2010) (municipal liability claim fails, where plaintiff failed to allege specific supporting facts); *Okolo v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) (dismissing § 1983 claim premised on failure to train, supervise, and adequately screen police officers, alleged without supporting facts); *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (dismissing § 1983 claim, where plaintiff alleged that defendant "failed to provide adequate training to [officers] about stopping vehicles and/or ordering passengers to step out of those vehicles in disregard of their disabilities or injuries"); *Johnson v. Smith-Johnson*, 2014 WL 30162627, at *8 (M.D. Tenn. July 3, 2014); *see also Thomas v. City of Chattanooga*, 298 F.3d 426, 432-33 (6th Cir. 2005) (if jury could infer a municipal-wide policy of condoning excessive force based solely on one instance of potential misconduct, it "would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard," which "has been forbidden by the Supreme Court").

presenting municipal liability claims is more difficult after *Twombly* and *Iqbal*, but the prevailing view within this circuit and within this district is that allegations that essentially amount to notice pleading of a municipal liability claim are insufficient. *See Johnson*, 2010 WL 3619790, at *2-*3 (reluctantly dismissing municipal liability claim under similar circumstances).

In sum, Ms. Minick's § 1983 claims against Metro Nashville will be dismissed. Because it is conceivable that Ms. Minick could allege sufficient facts to support a § 1983 municipal liability claim, the dismissal will be without prejudice.

## II. TGTLA Claims

### A. Allegations

Ms. Minick asserts state law negligence claims against Metro Nashville under the TGTLA. She claims that Metro Nashville had a duty to protect Minick's life and health, to have its employees refrain from conduct that created an unreasonable risk of injury or death, to adequately train its employees, and to refrain from the use of deadly force except where reasonably necessary to protect the health and safety of the officers and/or the public. She claims that Metro Nashville breached these duties because it failed to protect Minick "from the unreasonable and excessive use of deadly force" by the DSCO officers and because it "failed to adequately train and supervise its employees in regard to the proper use of force." (*See* Am. Compl., Count II.) Metro Nashville contends that it is entitled to sovereign immunity from Ms. Minick's TGTLA claims.

### B. Limited Waivers of Sovereign Immunity Under the TGTLA

The TGTLA codifies Tennessee's common law rules concerning sovereign immunity and states exceptions to the general grant of immunity from suit. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001).

Under the statute, the default rule is that, except as otherwise stated within the TGTLA, "[a]ll governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). The TGTLA contains specific provisions that waive sovereign immunity for identified types of claims, including (1) certain claims stemming from the negligent operation of motor vehicles by government employees acting within the scope of their employment (§ 202), (2) injuries caused by defective, unsafe, or dangerous conditions on highways streets, and sidewalks (§ 203), (3) injuries caused by certain "dangerous structures" under specified circumstances (§ 204), and (4) certain injuries stemming from the "negligent acts or omissions" of public employees acting within the scope of their employment (§ 205). Only the last of these limited waivers of sovereign immunity is relevant here.

In relevant part, § 205 states as follows:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of employment, except if the injury arises out of . . . (2) False imprisonment pursuant to mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or *civil rights*.

*Id.* § 29-20-205(2) (emphasis added). Stated differently, a governmental entity is liable for the negligent acts of its employees (but not their intentional acts), unless the alleged injury proximately caused by the government employee "arise[s] out of . . . civil rights." As many courts have previously noted, the statute is awkwardly worded: what does it mean for a negligence claim against a governmental entity to "arise out of" "civil rights"?

The Tennessee courts have never clarified the scope of § 29-20-205 as it relates to "civil rights" injuries. Accordingly, this court must attempt to predict how the Tennessee Supreme Court would construe the statute as it relates to claims against a municipality for failure to protect or adequately train its employees. *See Partee v. City of Memphis*, 449 F. App'x 44, 449 (6th Cir. 2011) (citing *Fed. Deposit Ins. Co. v. Stables*, 573 F.3d 289, 298 (6th Cir. 2009)).

Several principles must guide the court's analysis of the scope of the "civil rights" exception to the limited waiver of sovereign immunity set forth in § 205. *See Hughes v. Metro. Gov't of Nashville & Davidson Cnty*, 340 S.W.3d 352 (Tenn. 2011). In *Hughes*, the Tennessee Supreme Court provided the following guidance:

> The GTLA's waiver of sovereign immunity is narrowly confined in its scope. Statutes which waive immunity of the governmental entity from suit are to be *strictly construed in favor of the sovereign*. The [TGTLA] provides that "any claim for damages must be brought in strict compliance with the terms of this chapter." Tenn. Code Ann. § 29-20-201(c). . . . [T]he GTLA, as a statute in derogation of the common law, must be strictly construed and confined to its express terms, and that rule of construction has been expressly incorporated into the Act.

340 S.W.3d at 361 (certain internal quotation marks, non-statutory citations, and brackets omitted) (emphasis added).

### C. Scope of the Civil Rights Exception

Universally, courts appear to agree that the "civil rights" exception preserves the state's immunity against claims arising under the United States Constitution and 42 U.S.C. § 1983. *See Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2011). Thus, a negligence claim falls within this exception where the same circumstances give rise to both the negligence and civil rights claims. In other words, the TGTLA "preserves immunity for suits claiming negligent injuries arising from civil rights violations." *Id.* To the extent that Ms. Minick is seeking to hold

8

Metro Nashville liable for the negligence the four DSCO Officers involved in the incident with Minick, that claim is expressly barred by § 205(2).

Claims alleging the negligence of government employees in hiring, training, supervising, or retaining another government employee who committed civil rights violations present a more sensitive question. Assume that Metro Nashville supervisor X negligently fails to train Officer Doe, that Officer Doe thereafter uses unreasonable force on an arrestee as a result of that failure to train (in violation of the arrestee's civil rights), and the arrestee sues Metro Nashville for the supervisor's negligent failure to train. Does the negligence claim against Metro Nashville relate to an injury that "arises out of" "civil rights," to which Metro Nashville is therefore immune? As the Sixth Circuit observed in *Partee v. City of Memphis, Tenn.*, 449 F. App'x 444 (6th Cir. 2011), a municipality that engaged in independent negligent acts in hiring, supervising, or disciplining an officer may involve "other circumstances that preceded [the incident at issue] that are temporally and factually distinct."

Most courts have concluded that, where a case fundamentally sounds in a violation of an individual's federal civil rights (such as an excessive force claim), then claims against the government employer for negligent hiring, retention, or supervision fall within the "civil rights" exception to the waiver of sovereign immunity. In other words, courts applying the TGTLA have generally found that the government is immune from negligent hiring, supervision, and retention claims, where the underlying incident giving rise to the lawsuit fundamentally involves civil rights violations. Furthermore, many courts have found that a plaintiff cannot avoid the TGTLA's immunity restrictions simply by "couching some of her civil rights claims against the County in the guise of negligence," particularly where the "underlying acts which [the plaintiff] alleges to be negligent are by their very nature the type of conduct one usually associates with intentional torts []." *Campbell v. Anderson Cnty.*,

9

695 F. Supp. 2d 764 (E.D. Tenn. 2010); *see also Noyes v. City of Memphis*, 2012 WL 3060100, at *3 (W.D. Tenn. July 25, 2012); *Targonski v. City of Oak Ridge*, 2012 WL 2930813, at *11 (E.D. Tenn. July 18, 2012); *Herron v. Dugger*, 2011 WL 2882146, at *5 (W.D. Tenn. July 15, 2011); *Rhodes v. City of Chattanooga, Tenn.*, 2005 WL 2647921, at *8-*9 (E.D. Tenn. Oct. 14, 2005); *Jackson v. Thomas*, 2011 WL 1049804, at *5-*7 (Tenn. Ct. App. Mar. 23, 2011); *Hale v. Randolph*, 2004 WL 1854179, at *14-*17 (E.D. Tenn. 2004); *Okolo v. Metro.*, 892 F. Supp. 2d 931, 947 (M.D. Tenn. 2012).

### D. *Limbaugh* and *Baines*

Some courts, and the plaintiffs here, have cited decisions by the Tennessee Supreme Court in *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2001) and *Baines v. Wilson Cnty.*, 86 S.W.3d 575 (2002), in support of a contrary interpretation of § 205(2).

A bit of context is relevant here. In *Potter v. City of Chattanooga*, 556 S.W.2d 543 (Tenn. 1977), city police officers committed assault and battery on an arrestee, who sued the city for, in essence, failing to protect her from that foreseeable result (such as by failing to screen its police officers appropriately). In broad language, the Tennessee Supreme Court held that the state remained immune to the negligence claims because the underlying injuries "arose out of" the assault and battery. *Id.* at 545. Given that "assault and battery" was not among the enumerated exceptions to the waiver of sovereign immunity for negligence claims, courts construed *Potter* as holding that § 205(2) preserved the state's immunity from *all* intentional torts, not just those set forth in § 205(2). *See Limbaugh*, 59 S.W.3d at 83 ("As a result of *Potter*'s overbroad application of the intentional tort exception, courts following *Potter* have subsequently, albeit erroneously, held that the intentional tort exception preserves immunity for injuries arising from *all* intentional torts.") (emphasis in original)).

In *Limbaugh*, the Tennessee Supreme Court reconsidered *Potter* and partially overruled its construction of § 205(2). There, a nursing home resident's conservator sued a public medical center and

10

its nursing assistant for damages resulting from a nursing assistant's assault on his mother. 59 S.W.3d at 76. The plaintiff alleged that the medical center had prior notice of the nursing assistant's propensity for violence and negligently failed to institute precautionary measures, thereby causing his mother's injuries. *Id.* 76-77. Essentially, the complaint alleged that the medical center's negligence proximately caused the nursing assistant to commit assault and battery on his mother. *Id.* In reliance on *Potter*, the Tennessee Court of Appeals held that the medical center was immune from the claims under the TGTLA's intentional tort exception. *Id.* at 77-78. On appeal, the Tennessee Supreme Court affirmed the trial court's conclusions that (1) the nursing assistant in fact committed assault and battery, and (2) the nursing home was, in fact, negligent in failing to protect the victim from that foreseeable incident. *See id.* at 79-81. Subject to those assumptions, the court addressed whether the negligence claims against the medical center fell within one of § 205(2)'s enumerated exceptions to the waiver of sovereign immunity for negligence claims against governmental entities. *See id.* at 81-84.

The court observed that § 205(2) enumerates certain intentional torts (such as libel, slander, etc.) but not others. Applying basic principles of statutory principles of statutory construction, the court presumed that the Tennessee legislature intentionally removed the state's immunity from negligence claims relating to certain underlying intentional torts, but not others. *Id.* at 83-84. Based on that construction of the statute, the court found that § 205 of the TGTLA "removes immunity for injuries proximately caused by the negligent act or omission of a governmental employee except when the injury arises out of *only those specified torts enumerated in subsection (2)*." *Id.* at 84 (emphasis in original). Because "assault and battery" was not among the torts enumerated in § 205(2), the court held the plaintiff's independent negligence claims against the medical center could proceed, because they were not subject to an enumerated exception with respect to the underlying tort. *Id.* With respect to *Potter*, the court found that the *Potter* court had improperly "created" an additional exception to § 205's limited

11

waiver sovereign immunity by extending the immunity to cases involving injuries suffered in an underlying assault and battery claim. *Id.* Accordingly, the *Limbaugh* court overruled *Potter* to the extent it suggested that § 205 preserved the state's immunity from negligence premised on *any* underlying intentional torts. *Id.*

Notably, in a footnote, the majority in *Limbaugh* expressed its disagreement with Justice Holder, who argued in a concurrence that the court should have construed § 205 as authorizing *all* negligence claims against the state, "regardless of the nature of the underlying acts of the employee causing the injury." *See id.* at 82 n.7. In response to Justice Holder's position, the majority reiterated that the general waiver of sovereign immunity for negligence claims was subject to specific enumerated exceptions. *Id.* Applying the principle that provisions in derogation of the common law must be strictly construed, the majority "decline[d] to impose blanket liability on a governmental entity for its negligent employment practices *when one of the exceptions immunizing the entity is applicable*." *Id.* (emphasis added).

In *Baines,* the Tennessee Court of Appeals addressed a slightly different legal issue under the TGTLA. There, a firefighter sued the county (among other entities) for wrongfully discharging him in retaliation for filing a workers' compensation claim (an intentional tort). *Id.* at 577. The firefighter argued that the county was not immune from suit under § 29-20-205(2). On appeal, the *Baines* court observed that the tort of retaliatory discharge was an intentional tort. By its terms, § 205 only waives sovereign immunity for negligent acts or omissions. *Id.* at 578. Because the firefighter was asserting a direct *intentional* tort claim against the county, the court held that § 205 did not apply in the first place. *Id.* at 579-580. In *dicta*, the court also speculated about whether the firefighter could have proceeded under an alternative theory by alleging that the county was negligent in hiring, training, supervising, or retaining the supervisor who terminated the plaintiff. *Id.* at 580-81. Citing *Limbaugh*, the court

12

observed that retaliatory discharge and wrongful discharge were *not* among the torts enumerated in § 29-20-205(2) as exceptions to the waiver of liability for negligence claims. *Baines*, 86, S.W.3d at 581. Thus, the court noted, the county would not be immune from a claim that it negligently allowed one its employees to commit a retaliatory or wrongful discharge. *Id.* However, the firefighter had never asserted that the county engaged in any independent acts of negligence, so *Limbaugh* did not apply. *Id.*

### E. Appropriate Interpretation of *Limbaugh* and *Baines*

Taken in context, *Limbaugh* and *Baines* simply establish that § 205 waives the state's sovereign immunity from negligence claims that relate to underlying torts *not listed as exceptions to the waiver in § 205(2)*. Thus, where an underlying tort claim is not listed in § 205(2), a government entity may be subject to suit under § 205 to the extent that its employees' negligent hiring, training, supervision, or retention allowed another employee to cause the plaintiff's injuries stemming from that underlying intentional tort. By the same token, and as footnote 7 in *Limbaugh* reinforces, § 205 *preserves* the state's immunity from negligence claims that relate to underlying torts that *are* among 205(2) enumerated exceptions to the waiver, such as "civil rights" claims.

### F. Appropriate Construction of § 205(2).

The court finds that § 205(2) bars negligence claims against the state stemming from underlying civil rights violations, even where the negligence claim purports to allege independent acts of negligence by the state. As the Tennessee Supreme Court reiterated in *Hughes*, the court must construe the TGTLA strictly in favor of the sovereign. *Hughes*, 340 S.W.3d at 361. Furthermore, *Limbaugh* and *Baines* reinforce that sovereign immunity is preserved for negligence claims against the state premised on enumerated underlying intentional

13

tort violations by government employees, including injuries arising out of "civil rights" violations.

Here, Ms. Minick would not have a negligence claim to assert in the first place, if not for the alleged violations of Minick's civil rights by the defendant officers. This case is fundamentally a civil rights suit related to alleged physical abuse of Minick while he was being held in police custody at Nashville General Hospital. The negligence claims against Metro Nashville flow from those underlying federal civil rights violations. Furthermore, Ms. Minick's negligence claims against Metro Nashville are premised on essentially the same theory of liability as her § 1983 municipal liability claims – *i.e.*, they are fundamentally "civil rights" claims. Thus, as with many other district courts under similar circumstances, this court finds that Metro Nashville retains immunity from the negligence claims asserted against it here.

On a final note, Ms. Minick argues that the TGTLA would not bar her claims if the court or the trier of fact ultimately finds that Minick's constitutional rights were not violated, in which case she could proceed against Metro Nashville on her "negligence" claims. But this is a bridge too far. The Amended Complaint alleges that the DSCO Officers brutally beat and suffocated Minick to death while he was in police custody, while he was restrained, and while he posed no significant threat of death or serious bodily injury to the defendant officers. It alleges that the use of deadly force was "unreasonable and totally without justification" and that it was "so outrageous that it shocks the conscience so as to violate Mr. Minick's substantive due process rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution." With respect to these allegations, Ms. Minick alleges intentional civil rights torts, not torts sounding in Tennessee common law negligence. Sovereign immunity is not waived for the intentional actions of state employees. It would render the TGTLA's protections illusory if plaintiffs could

simply "plead around" the TGTLA by repackaging excessive force claims as "negligence" claims and advancing a theory that the defendant officers "negligently" beat Minick to death, somehow in compliance with the United States Constitution but nevertheless in violation of state common law torts that do not involve intentional or reckless conduct. Again, the court construes the TGTLA as seeking to preclude claims that the state's negligence (via its employees) proximately caused an individual to suffer "civil rights" deprivations, which are precisely the claims asserted here.

### III. Sheriff's Statute

Under Tenn. Code Ann. § 8-8-302, "[a]nyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office." The statute, also known as the "Sheriff's Statute," waives governmental immunity and essentially imposes vicarious liability against a county for claims falling within its scope. *See Siler v. Webber*, 443 F. App'x 50, 53 (6th Cir. 2011); *Davis v. Hardin Cnty., Tenn.*, 2002 WL 1397276, at *3 (W.D. Tenn. May 22, 2002).

The parties dispute whether the officers named in the Amended Complaint can be considered "deputy sheriffs" under the Sheriff's Statute. Metro Nashville appears to argue that the officers named in the Amended Complaint are "jailers" and that "jailers" are not "deputies appointed by the sheriff" under the Sheriff's Statute. In opposition, Ms. Minick does not appear to dispute Metro Nashville's legal premise that the actions of "jailers" are not subject to the Sheriff's Statute. However, Ms. Minick argues that the issue of whether the officers here are "sheriff's deputies" or "jailers" is essentially a question of fact that should not be resolved

15

without appropriate discovery. In its Reply, Metro Nashville points out that Ms. Minick alleges that each defendant is a "corporal," not a sworn deputy or another type of employee "appointed by the sheriff."

The Sheriff's Statute was passed in 1971, one year before the TGTLA. Because (like the TGTLA) the Sheriff's Statute acts in derogation of the common law, it must be strictly construed in favor of the sovereign. Tenn. Code Ann. § 8-20-101 grants sheriffs the power to appoint deputies, subject to application to, and approval by, the judge of the circuit court in the sheriff's county. *See* Tenn. Code Ann. § 8-20-101(a)(2); *Sapp v. State ex rel. v. Nipper*, 524 S.W.2d 652 (Tenn. 1975) (approving constitutionality of procedures for appointing sheriff's deputies). Tenn. Code Ann. § 8-8-301 immunizes the sheriff from liability for any wrongdoing "on the part of any deputy appointed by the sheriff," even for actions taken by the "deputy" acting under color of office. However, § 8-8-302 (referred to herein as the Sheriff's Statute) provides that the county may be sued for the acts or omissions of "any deputy appointed by the sheriff." Construing these provisions in harmony, the Tennessee legislature immunized the sheriff himself from liability for injuries caused by deputies but authorized lawsuits against the county for injuries caused by those same deputies. Construing the Sheriff's Statute strictly in favor of the sovereign, it therefore removes sovereign immunity only in a narrow class of cases: those relating to a "deputy" appointed by a sheriff under statutorily prescribed procedures. Thus, although a county may employ different types of officers, only a "deputy appointed by the sheriff" is covered by the Sheriff's Statute. *See Davis*, 2002 WL 1397276, at *3 (finding that, because county "jailers" are distinct from sheriff's "deputies," Sheriff's Statute does not apply to jailers).

Here, Ms. Minick's Amended Complaint identifies the defendant officers as "corporals" within the DSCO. Ms. Minick does not allege that they are "deputies," nor does she allege that

16

they were appointed as deputies under required statutory procedures. The Amended Complaint therefore contains insufficient allegations to state a plausible claim that the individual "corporals" are in fact "deputies" within the meaning of the Sheriff's Statute. The court therefore will dismiss the Sheriff's Statute claims as well.[4]

### IV. Supplemental Jurisdiction

In a footnote, Metro Nashville requests that, if the court declines to dismiss the TGTLA claims or the Sheriff's Statute claims, the court should decline to exercise supplemental jurisdiction over those claims. Because the court will be dismissing these claims, Metro Nashville's request is moot.

## CONCLUSION

The defendants' Motion to Dismiss will be granted. The plaintiff's municipal liability claims under § 1983 will be dismissed without prejudice, her claims under the Sheriff's Statute will be dismissed without prejudice, and her TGTLA claims against Metro Nashville will be dismissed with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[4] The court will dismiss the Sheriff's Statute claims without prejudice. If the plaintiff discovers facts (or is already aware of facts) sufficient to make plausible factual allegations that the individual defendants are in fact "deputies appointed by the sheriff," the plaintiff may seek leave to amend her Amended Complaint.