UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HEATHER MINICK, individually and as surviving spouse of MICHAEL MINICK, and as co-administrator of the Estate of Michael Minick, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:12-cv-0524 Judge Aleta A. Trauger |
| v. | ) ) | |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, CHRISTOPHER FOSTER, Individually and in his official capacity, MATTHEW BARSHAW, individually and his official capacity; JEFFREY DAVIDSON, individually and his official capacity; MORRIS CRAVEN, individually and in his official capacity, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) | |

## MEMORANDUM

Plaintiff Heather Minick has filed a Motion to File a Second Amended Complaint under Fed. R. Civ. P. 15(a) (Docket No. 158), to which putative defendant Metropolitan Government of Nashville and Davidson County ("Metro Nashville") has filed a Response in opposition (Docket No. 160), and the plaintiff has filed a Reply (Docket No. 165). For the reasons stated herein, the motion will be granted in part and denied in part.

## BACKGROUND[1]

### I. Procedural History

---

[1] A description of the alleged facts in this case are set forth in the court's August 4, 2014 opinion (Docket No. 156), familiarity with which is assumed.

1

### A. Original Complaint

On May 24, 2012, the plaintiff filed a Complaint asserting claims under § 1983 against numerous defendants, including Davidson County Sheriff Office ("DSCO") officers Christopher Foster, Matthew Barshaw, Jeffrey Davidson, and Morris Craven, as well as Metro Nashville and Davidson County Sheriff Hall. (Docket No. 1.)[2] On November 19, 2012, the court dismissed many of the claims and dismissed certain defendants from the lawsuit. (Docket No. 117.) In most relevant part, the court dismissed the § 1983 claims against Metro Nashville and DCSO Sheriff Daron Hall on the grounds that neither defendant could be held liable under § 1983 on a *respondeat superior* basis. On November 29, 2012, another defendant, Nashville General Hospital ("NGH") Unit Secretary Mailena Mason, filed an interlocutory appeal of the court's denial of qualified immunity with respect to her (Docket No. 119). During the pendency of Ms. Mason's appeal, the plaintiff did not attempt to advance her case against any other defendant. On October 22, 2013 (about one year later), the Sixth Circuit held that the claims against Ms. Mason were subject to dismissal on grounds of qualified immunity (Docket No. 125), and this court accordingly dismissed those claims with prejudice (Docket No. 127).

On remand, the plaintiff retained substitute counsel in early February 2014 (*see* Docket Nos. 131-133) and the court held a case management conference with the parties on February 24, 2014. (Docket No. 137.)[3]

---

[2] The court construed the Complaint as also asserting "medical battery" claims under Tennessee law. Those claims have been dismissed.

[3] The parties also stipulated to the dismissal of the Metropolitan Nashville Hospital Authority d/b/a Nashville General Hospital and Nashville General Hospital at Meharry. (Docket No. 139.) Following that dismissal, the only remaining defendants were Metro Nashville and the four individual DSCO officers.

### B. The First Amended Complaint

On March 21, 2014, the plaintiff filed a Motion for Leave to File an Amended Complaint Under Rule 15(a) (Docket No. 140), which, *inter alia*, sought to assert claims under § 1983 against the individual defendant officers (putative Count I) and three claims against Metro Nashville, including claims under (1) § 1983 (putative Count I), (2) the Tennessee Governmental Tort Liability Act ("TGTLA") (putative Count II), and (3) Tenn. Code Ann. § 8-8-302 (putative Count III), which removes Metro Nashville's immunity for certain claims relating to the actions of a "deputy appointed by the sheriff."

Without opposition, the court granted the requested leave, and the plaintiff filed a First Amended Complaint on April 2, 2014. (Docket No. 143.) Metro Nashville filed a Motion to Dismiss the First Amended Complaint, asserting that none of the three counts against Metro Nashville was sufficient to state a claim. (Docket No. 144.) With respect to the claim under § 8-8-302, Metro Nashville argued that the correctional officers were not identified as "deputies" in the Amended Complaint and strongly suggested that the officers were actually "jailers" not subject to the statute's scope.

On August 4, 2014, the court granted Metro Nashville's motion. The court dismissed the TGTLA claim with prejudice, the § 1983 claim without prejudice, and the § 8-8-302 claim without prejudice. With respect to the § 8-8-302 claim, the court explained that the First Amended Complaint did not allege that the officers were acting as "deputies" within the meaning of the statute. The court also noted that the plaintiffs could seek to reassert the claims based on a sufficient factual predicate. (Docket Nos. 156 and 158.)

### C. Motion for Leave to File a Second Amended Complaint and Metro Nashville's Motion to Dismiss

On August 5, 2014, the plaintiffs filed the instant Motion for Leave to File a Second Amended Complaint (Docket No. 158), which seeks to (1) re-plead the § 8-8-302 claim against Metro Nashville; and (2) assert a claim against Sheriff Hall based upon Tenn. Code Ann. § 41-4-101, under which the sheriff is "civilly responsible" for the actions of a "jailer" whom he appoints.

On August 19, 2014, Metro Nashville filed a Response in opposition, in which it argues that the putative claims against it and Sheriff Hall are futile or should be left to a Tennessee state court to decide. (Docket No. 160.) With respect to the claim against Sheriff Hall, Metro Nashville argues that the amendment should not be permitted because (1) it is not clear whether there is a private cause of action under § 41-4-101, (2) the claim is time-barred, or (3) the issue involves novel and complex issues of Tennessee law that should be resolved in the Tennessee courts. With respect to the proposed § 8-8-302 claim against Metro Nashville, Metro Nashville argues that the court should not permit the requested amendment because (1) the re-pleaded allegations are insufficient to state a claim, (2) regardless of the allegations in the proposed Second Amended Complaint, the individual officer defendants are not in fact "deputy sheriffs" or were not acting as "deputy sheriffs" during the underlying incident, or (3) the scope, application, and interplay of Tenn. Code Ann. § 8-8-302 and Tenn. Code Ann. 41-4-101 present unsettled issues of Tennessee law that this court should not decide.

With respect to its factual argument, Metro Nashville has filed the Declaration of Constance Taite (Docket No. 161), the Administrative Services Manager for the DSCO. Taite avers that: (1) on May 30, 2011 (the date of the incident at NGH), DSCO officers Barshaw, Davidson, and Craven "provided security for [NGH] and were classified as non-civil service security officers employed by DSCO[,]" and DSCO officer Foster "was assigned to the DSCO

4

transportation division as a correctional officer"; (2) Barshaw, Davidson, Craven, and Foster "are not Deputy Sheriffs"; and (3) Sheriff Hall did not apply to a circuit court to approve the hiring of those four officers under Tenn. Code Ann. § 8-20-101(a)(2), which sets forth the procedure for appointing a deputy sheriff.

Metro Nashville also contends that, short of ruling on the merits in its favor, the court should either (a) deny the proposed amendments and allow the plaintiff to bring the state law claims in Tennessee state court, or (b) if the court decides to permit the proposed amendments, certify three questions to the Tennessee Supreme Court for resolution.[4]

The plaintiff has filed a Reply (Docket No. 165), in which she states that, on August 20, 2014 – one day after Metro Nashville filed its Response – she took the depositions of the four individual defendant DSCO officers. Although transcripts were not available at the time she filed her Reply, the plaintiff represents as follows:

> [E]ach Defendant deputy testified that upon being hired by the Davidson County Sheriff's Office, they [sic] completed a six-week basic training academy. Upon successfully completing the academy, each deputy was sworn by Sheriff Hall personally and provided a badge which had the words "Deputy Sheriff" specifically printed on the face of the badge. Each deputy also considered themselves [sic] to be deputies.

(*Id.* at pp. 1-7.) In light of these facts, the plaintiff argues that Metro Nashville should be estopped from arguing that these four DSCO officers are not "deputy sheriffs," even if Sheriff Hall did not comply with Tenn. Code Ann. § 8-20-101(a)(2) when hiring them.

---

[4] Specifically, Metro Nashville would have the court certify the following three questions: "(1) What, if anything, is the legal distinction between a jailer/corrections officer and a Deputy Sheriff for purposes of liability under Tennessee law? (2) Is an employee of the Davidson County Sheriff's Office, whose employment was not approved by a court, a "Deputy Sheriff" under Tenn. Code Ann. § 8-8-302? (3) Does Tenn. Code Ann. § 41-4-101 create a private right of action for damages against a Sheriff and, if so, what are the limits of a Sheriff's individual liability?"

Metro Nashville has not responded to the plaintiff's Reply. Therefore, the plaintiff's representations about the deposition testimony of the four officerers are unrebutted.

## RULE 15 STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court stated:

> Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id*. at 182 (internal citations omitted). Thus, leave should be given unless there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the non-moving party, or futility of the proposed amendment. *Id*.; *see also Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Thiokol Corp. v. Dept. of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 382-82 (6th Cir. 1993); *see Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *see also Kottmyer v. Maas*, 436 F.3d 684, 691-92 (6th Cir. 2006).

## ANALYSIS

I. **Deputies, Jailers, Counties, and Sheriffs**

The proposed amendments involve provisions of Tennessee law relating to the liability of a county or sheriff for the actions of "jailers" and "deputies."

Tenn. Code Ann. § 8-8-301 *et seq.*, also known as the "Sheriff's Statute," contains provisions relating to the liability of a county or sheriff for the actions of deputies. Section 301 provides absolute immunity to the sheriff for the actions of deputies:

> No sheriff, whether elected or appointed, nor any surety on the sheriff's bonds, shall be liable for any wrongs, injuries, losses, damages, or expenses incurred as a result of any act or failure to act on the part of any deputy appointed by the sheriff, whether the deputy is acting by virtue of office, under color of office or otherwise.

*Id.*; *see also Hensley v. Fowler*, 920 S.W.2d 649, 651 (Tenn. Ct. App. 1995) (stating that, even if officer accused of misconduct were a "regular deputy sheriff," defendant Sheriff Fowler "enjoys absolute immunity under" § 301). Although § 301 immunizes the sheriff from liability for the actions of his deputies, § 302 provides a limited waiver of immunity relative to the county:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Thus, by its plain terms, § 302 removes a county's immunity to the extent that (1) an individual officer was a "deputy appointed by the sheriff", and (2) at the time of the incident, the individual officer was "acting by virtue of or under color of the office." *See O'Neal v. DeKalb Cnty.*, 531 S.W.2d 296, 298 (Tenn. 1975) (holding that the state "sanctions suits against counties for the misconduct of deputies" and "reflects a waiver of governmental immunity"). In essence, it imposes vicarious liability against a county for claims falling within its scope. *See Siler v.*

7

*Webber*, 443 F. App'x 50, 53 (6th Cir. 2011); *Davis v. Hardin Cnty., Tenn.*, 2002 WL 1397276, at *3 (W.D. Tenn. May 22, 2002); *Currie v. Haywood Cnty.*, 2011 WL 826805, at *3 (Tenn. Ct. App. Mar. 10, 2011) (stating that, under the Sheriff's Statute, a plaintiff "may recover from a governmental entity for the intentional misconduct of a deputy acting by virtue of or under color of his office."); *see also Mathes v. Metro Gov't of Nashville & Davidson Cnty.*, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010).[5]

A separate statute, Tenn. Code Ann. § 41-4-101, appears to remove the sheriff's immunity for certain actions by "jailers":

> The sheriff of the county has, except in cases otherwise provided by law, the custody and charge of the jail of the county and of all prisoners committed to the jail and may appoint a jailer, for whose acts the sheriff is civilly responsible.

Although no Tennessee court has squarely held that this statute permits a plaintiff to hold the sheriff liable for the actions of a "jailer," several courts (including this one) have suggested that it does. *See Davis*, 2002 WL 1397276, at *2 (". . . Defendants are correct in that the sheriff is responsible for the actions of the jailers he or she appoints."); *Readle v. Townsend*, 1987 WL 7721, at *2-*3 (Tenn. Ct. App. Mar. 12, 1987) (Franks, J., concurring) (concurring in the denial of the sheriff defendant's motion to dismiss a jailed person's claims against him, noting that the state statute makes the sheriff "civilly responsible" for the actions of jailers); *Turner v. Welkal*, No. 3:12-cv-0915, 2014 WL 347815 (M.D. Tenn. Jan. 31, 2014) (observing in *dicta* that the statute "appears to create vicarious liability on the part of the sheriff for the jailer's actions").

---

[5] Prior to the passage of this statute, the sheriff was personally responsible for the actions of his deputies. The Sheriff's Statute immunized the sheriff and shifted some measure of responsibility to the county for the actions of deputies.

Unfortunately, Tennessee law seems to provide limited guidance as to what it means to be a "deputy appointed by the sheriff" or a "jailer." Several provisions of the Tennessee Code address deputy appointments. For example, (1) Tenn. Code Ann. § 8-20-101(a)(2) authorizes a sheriff to appoint deputies, subject to application to, and approval by, the judge of the circuit court in the sheriff's county; (2) and Tenn. Code Ann. § 8-22-110 provides for the emergency appointment of "special deputies" in exceptional circumstances (such as a "riot") "without making application to the court[.]"[6] Several provisions also seem to draw a distinction between deputies and jailers. For example, (1) Tenn. Code Ann. § 8-8-201(a)(3) provides that it is a sheriff's duty to "take charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep them personally, or *by deputies or jailer*, until discharged by law[.]"; and (2) Tenn. Code Ann. § 40-11-128 disqualifies certain officials from serving as bail bondsmen, including "jailers, . . . sheriffs, [and] deputy sheriffs[.]" Also, § 41-4-101 itself states that a sheriff may appoint a "jailer" and is held "civilly responsible" for that jailer's actions. Given that a sheriff is immune from the actions of "deputies" but (arguably) not "jailers", this indicates that the terms "deputies" and "jailers" are not synonymous. *See Davis*, 2002 WL 1397276, at *3 (finding that a "jailer" is not a "deputy" for purposes of the Sheriff's Statute).

The plaintiffs contend that, although a jailer is necessarily a deputy, a deputy can serve as a jailer. The plaintiffs cite no caselaw authority for this proposition, although the court notes that

---

[6] *See also* Tenn. Code Ann. § 8-8-112: "Whenever any officer is authorized or required to appoint a deputy, such deputy, before proceeding to act, shall take the constitutional oaths and oath of office, which shall be accompanied by the same certificate, filed in the same office, and with the same endorsement, as the oaths of such deputy's principal. The provisions of this section do not apply to deputies who may be employed in particular cases only."

9

there are numerous references (apparently without controversy) to "deputy jailers" or to a "Deputy" being described as a "jailer" in Tennessee cases.[7] By the same token, some cases also reference jailers who were not "deputies." *See, e.g.*, *State v. Sherron*, 2006 WL 2978301, at *2 (Tenn. Crim App. Oct. 17, 2006) (noting that "jailers quickly alerted Lieutenant Richard Stitts, a deputy with the Crockett County Sheriff's Department"). These references leave room for debate here. Moreover, the court has not located any case that squarely addresses the potential interplay between § 41-4-101 and the TGTLA, which could add another layer of legal complexity to an analysis of the scope and application of § 41-4-101.

Although the parties have not fully briefed the statutory construction issues, it does appear that these statutes do raise unsettled and complex issues of Tennessee law, including the relevant distinctions between jailers and deputies for purposes of liability under the Sheriff's Statute (relative to the County) and § 41-4-101 (relative to the Sheriff). Nevertheless, it does appear that at least some federal courts have dismissed claims against a county under the Sheriff's Statute, where the relevant employees definitively were not "deputies appointed by the sheriff." *See, e.g.*, *Lundy v. Knox Cnty., Tenn.*, 2014 WL 1491235, at *4 (E.D. Tenn. Apr. 15, 2014) (dismissing Sheriff's Statute claims against county for alleged actions by "jailhouse personnel"); *Graham v. Sequatchie Cnty. Gov't*, 2011 WL 1305961, at *11 (E.D. Tenn. Apr. 4, 2011) (dismissing Sheriff's Statute claims against Sequatchie County for alleged actions by

---

[7]*See, e.g.*, *State v. Jordan*, 325 S.W.3d 1, 34 (Tenn. 2010) (Tenn. 2010) (referencing "Madison County Deputy Jason Walker, a jailer at the Criminal Justice Complex"); *Macon v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 504-505 (Tenn. Ct. App. 2009) (describing wrongful termination claim brought by a "deputy jailer" within the Shelby County Sheriff's Department); *State v. Coleman*, 2002 WL 125694, at *2 (Tenn. Crim. App. Jan. 31, 2002) (referencing "Deputy Paul King, who was working as a jailer on the date of the offense").

federal marshals and officers from another county, whom plaintiff alleged were "*de facto* deputy sheriffs" acting under Sequatchie County Sheriff's command).

## II. Claim Against Sheriff Hall

Here, the claim against Sheriff Hall under § 41-4-101 is untimely. Assuming *arguendo* that § 41-4-101 permits a private right of action against Sheriff Hall on vicarious liability grounds, the statute contains no express statute of limitations applicable to that right of action. "When a statute includes no express statute of limitations, the court borrows the most suitable statute or other rule of timeliness." *See In re Estate of Wair*, 2014 WL 3697562, at *3 (Tenn. Ct. App. July 23, 2014). Since the instant action is grounded in claims of personal injury and civil rights, the relevant limitations statute would be Tenn. Code Ann. § 28-3-104, which sets forth a one-year statute of limitations for actions asserting "injuries to the person" or "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes[.]"[8]

Here, the underlying incident took place on May 30, 2011. The court previously dismissed the lone (timely) § 1983 claim against Sheriff Hall on November 19, 2012, nearly two years before the instant request to add Sheriff Hall back into the case under a Tennessee statute that had not previously been invoked in this case. The plaintiff does not argue that any relevant circumstances have changed in the interim or that any of the requirements for "relation back"

---

[8] The plaintiff's Reply brief does not meaningfully respond to this argument, other than to state that, in *Jenkins v. Loudon Cnty.*, 736 S.W.2d 603 (Tenn. 1987), the Tennessee Supreme Court considered a claim against a county to recover on a federal § 1983 judgment against employees of the county for alleged civil rights deprivations, apparently well after the statute of limitations otherwise would have run. *Jenkins* does not discuss statute of limitations issues at all, other than to note, significant for this court's purposes, that "Plaintiff attempted to amend her Federal Court complaint to bring Defendant [the county] into that action but the Federal District Court dismissed Loudon County prior to trial *because the applicable statute of limitations had run* on her claim against the county." *Id.* at 604 n.1 (emphasis added).

under Fed. R. Civ. P. 15(c) have been met here. Adding Hall at this stage would not be an attempt to "cure" a defective pleading; it would essentially amount to adding a new party to the case well after the statute of limitations has run. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

Accordingly, the court will not permit any amendment to add Sheriff Hall to this case. To the extent this could lead to incomplete recovery for the plaintiff under state law (if the deputies were acting as "jailers," for example), the plaintiff had ample opportunity to add this theory of liability at an earlier stage in this case but failed to do so. Furthermore, it is unclear to the court what the implications of the *Jenkins* case are for the plaintiff. If the import of *Jenkins* is that the plaintiff would have the opportunity to re-litigate otherwise untimely claims under § 41-4-101 before a Tennessee court, but only at the cost of re-litigating the issues of liability and damages as to Sheriff Hall, then the plaintiff will have to make a strategic decision about how to proceed if she prevails against the individual officers under § 1983 in this court.[9] At any rate, the

---

[9] The court notes several curious aspects of the *Jenkins* opinion, in which the Tennessee Supreme Court held that a separate action to recover against the county on a § 1983 judgment against a deputy sheriff would require re-litigation of the case in "the same manner and to the same extent as if the Federal Court judgment had not been awarded." 736 S.W.3d at 609. First, the *Jenkins* court relies on the earlier Tennessee Supreme Court decision in *Grundy County v. Dyer*, 546 S.W.2d 577 (Tenn. 1977), which the *Jenkins* court acknowledges was issued at a time when civil rights claims could not be brought in Tennessee courts, and state political subdivisions were not considered "persons" subject to suit under § 1983. *See Jenkins*, 736 S.W.3d at 610 n.10. Both those conditions have changed. Second, citing to Tenn. R. App. P. 13(b), the *Jenkins* court also acknowledged that "[w]hether Plaintiff's Federal Court judgment has any effect under the principles of res judicata or collateral *is not an issue in this opinion*." *Id.* (emphasis added). Tenn. R. App. P. 13(b) provides that "[r]eview generally will extend only to those issues presented for review," suggesting that the *Jenkins* court noticed a potential concern with respect to issue preclusion or claim preclusion but declined to address it because it had not been raised by the parties.

potential for re-litigation of a putative lawsuit under a rarely invoked statute provides no grounds to add Sheriff Hall to this lawsuit at such a late stage in the proceedings.

### III. Sheriff's Statute Claim Against Metro Nashville

With respect to Metro Nashville, the court is satisfied that the plaintiffs' proposed amendments satisfy the Rule 12 standard. The proposed amendments allege that the individual officer defendants were acting as "deputies" within the meaning of § 8-8-302 on May 30, 2011, which is sufficient to put Metro Nashville on notice of a plausible vicarious liability claim.

With respect to Metro Nashville's factual submission and the plaintiff's unrebutted contentions concerning the deposition testimony of the individual officers, there indeed appear to be disputed factual issues that require further inquiry and targeted briefing. Furthermore, it would be atypical for this court to consider factual matters in the context of a Rule 15 motion, because futility is generally determined by reference only to the allegations set forth in a proposed amended pleading. To the extent those materials provide relevant background information, they merely reinforce this court's conclusion that the allegations merit discovery and resolution upon a developed factual record. Thus, at this stage, the court expresses no opinion as to whether the individual officers were acting as "deputies" within the meaning of the Sheriff's Statute.

---

Here, the plaintiffs contend that, under *Jenkins*, they might be required to re-litigate any vicarious liability claims against Metro Nashville or Sheriff Hall all over again in state court simply to collect on a judgment against the individual officers (assuming that neither Metro Nashville nor Sheriff Hall had an opportunity to defend themselves in this case). Although Metro Nashville and Sheriff Hall presumably would be afforded at least the opportunity to litigate any issues not necessarily determined by a § 1983 judgment (such as whether the officers acted as "deputies" or jailers" under Tennessee statutory law), this court is not certain that the plaintiffs' fears of a complete do-over are well-founded. As the court has noted, the *Jenkins* court raised, but did not explore, two significant caveats to its holding in this regard.

## IV. Potential Certification and the Exercise of Supplemental Jurisdiction

As to Metro Nashville's request that the court certify three legal questions to the Tennessee Supreme Court (an argument to which the plaintiff has not responded), the court's refusal to permit the addition of Sheriff Hall obviates the need to address one of those questions. The other two questions relate to the proper construction of the Sheriff's Statute, the appropriate definitions of "jailer" and "deputy," and the circumstances under which a "corrections officer" might qualify as either, both, or neither – issues that bear on Metro Nashville's potential liability.

Construction and application of the Sheriff's Statute appear to involve novel and complex issues of Tennessee law.[10] Nevertheless, on the current record at least, it would be premature for the court to certify any questions to the Tennessee Supreme Court without a better sense of the factual record, targeted briefing concerning the applicable law, and the benefit of the plaintiff's position as to whether certification is warranted. Also, it may be that the facts, when squarely presented to the court, will show that the correctional officers at issue clearly were (or were not) acting as "deputies" for purposes of Sheriff's Statute liability during the relevant time frame. Furthermore, a judgment or jury verdict in favor of the individual officers would presumably preclude any Sheriff's Statute claim against Metro Nashville, thereby mooting these issues entirely.

As to the matter of supplemental jurisdiction, the court finds that it would be premature at this stage to decline to exercise jurisdiction over the Sheriff's Statute claim against Metro

---

[10] If the facts show that the correctional officers at issue held themselves out as deputies on the relevant date, the issues could become even more complicated.

Nashville.[11] However, the court observes that there is precedent for remanding or dismissing Sheriff's Statute claims at an appropriate stage. *See, e.g., Thomas v. Bivens*, 2011 WL 32207, at *11 (E.D. Tenn. Jan. 5, 2011) (remanding Sheriff's Statute claim against county, in light of a "novel or complex issue of state law" and because, "in the court's view, to try the state law claims in conjunction with the plaintiff's federal claims might confuse the jury, or at a minimum, distract the jury from the primary issues in this case").

For these reasons, at this stage, the court will not certify the remaining two questions to the Tennessee Supreme Court, and the court will exercise supplemental jurisdiction over the re-pleaded Tennessee vicarious liability claims against Metro Nashville. The court may revisit this finding at a later stage in the proceedings upon an appropriate motion.[12]

## **CONCLUSION**

The plaintiff's Motion for Leave to Amend will be granted in part and denied in part. The plaintiff will be granted leave to file a Second Amended Complaint that asserts claims against Metro Nashville under the Sheriff's Statute. However, the plaintiff will not be permitted to plead a claim against putative defendant Sheriff Hall.

---

[11] It is also not clear to the court that it even has discretion to refuse to permit an amendment under Rule 15(a) to add a state law claim simply because the court perceives that a factor favoring discretionary dismissal of that claim without prejudice under § 1367(d) may ultimately be warranted.

[12] If the parties were to agree that certification is warranted on a particular legal issue or issues (favoring certification), or that they both prefer to litigate the Tennessee issues in state court following a judgment in this court (favoring a stay of the Sheriff's Statute claim or its dismissal without prejudice), they can bring the matter to the court's attention. The court suspects that there may be room for agreement among the parties on a fair and efficient approach.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge