# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **HEATHER MINICK, individually and as surviving spouse of MICHAEL MINICK, and as co-administrator of the Estate of Michael Minick,** )<br>)<br>)<br>)<br>) | |
| **Plaintiff,** ) | **Case No. 3:12-cv-0524** |
| ) | **Judge Aleta A. Trauger** |
| **v.** ) | |
| ) | |
| **METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, CHRISTOPHER FOSTER, individually and in his official capacity, MATTHEW BARSHAW, individually and his official capacity; JEFFREY DAVIDSON, individually and his official capacity; MORRIS CRAVEN, individually and in his official capacity,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| **Defendants.** ) | |

## **MEMORANDUM**

On December 1, 2014, the plaintiff filed a Second Amended Complaint that names Metropolitan Government of Nashville and Davidson County ("Metro Nashville") as a defendant. (Docket No. 170.) Metro Nashville has filed a Motion to Strike the Second Amended Complaint (Docket No. 173), to which the plaintiff has filed a Response in opposition (Docket No. 175). The plaintiff has filed a Motion for Leave to File a Third Amended Complaint (Docket No. 171), to which Metro Nashville has filed a Response in opposition. (Docket No. 175.) On December 12, 2014, the court held a discovery dispute telephone conference, which in part addressed the pending motions. For the reasons explained herein, the court will grant Metro Nashville's Motion to Strike, the Second Amended Complaint will be

1

stricken, the court will grant in part and deny in part the plaintiff's Motion for Leave, and the court will order the plaintiff to file a Revised Second Amended Complaint that includes only the Sheriff's Statute claim.

## BACKGROUND

### I. Overview

The basic factual background and extensive procedural history of this case is summarized in previous opinions, familiarity with which is assumed. (*See* Docket Nos. 117, 156, and 167.)

Briefly, the plaintiff, Heather Minick, is the surviving spouse of Michael Minick ("Minick"). According to the operative Amended Complaint, on May 30, 2011, Minick was arrested and transported to Nashville General Hospital ("NGH") under the custody of the Davidson County Sheriff's Office ("DCSO"). At the hospital, Minick was restrained to his hospital bed within the hospital's "lock up" area pending treatment for a condition not specified in the Amended Complaint.[1] Defendant DCSO Officer Christopher Foster was assigned to guard Minick. Ostensibly because Minick was swearing and not staying in his bed, Officer Foster called for assistance, and DCSO Officers Matthew Barshaw, Jeffrey Davidson, and Morris Craven responded. After conferring outside the room, all four officers entered the room, closed the door, and allegedly sprayed Minick in the face with chemical spray, forcefully took him to the floor, and struck him in the face and other parts of his body until he stopped breathing, stopped moving, defecated on himself, and began turning blue from asphyxiation. NGH medical

---

[1] Although it is not part of the court's analysis in a Rule 12(b)(6) motion, the court notes that evidence in the record indicates that Minick may have been suffering from some type of "excited delirium" following his arrest. The condition may have caused him to engage in irrational behavior, required medical treatment at NGH, and (at least purportedly) justified restraining him to the hospital bed during treatment.

staff responded and restored Minick's heartbeat, but he was left in a coma and died on July 2, 2011 of complications stemming from the incident.

On May 24, 2012, the plaintiff and Minick's mother, Doris Hawkins-Tweed, brought § 1983 claims against numerous defendants, including DCSO Sheriff Daron Hall, among others. Subsequently, (1) several defendants and Ms. Hawkins-Tweed were dismissed voluntarily (Docket Nos. 73 (DCSO), 74 (Metro Nashville Police Department), and 80-81 (Hawkins-Tweed)), (2) the court dismissed additional defendants under Rule 12(b)(6) or Rule 56 (Docket No. 118) (Corrections Corporation of America, Neil Wolfe, Chief of Police Steve Anderson, NGH Nurses Cynthia Allison, Ben Baggett, and Todd Ewing), and (3) following an interlocutory appeal, the Sixth Circuit reversed this court's denial of qualified immunity to NGH Unit Secretary Mailena Mason on one claim, resulting in her dismissal from the case (Docket No. 127).[2] After this sequence of events was completed, only the Individual DCSO Officers and Metro Nashville remained as defendants.[3]

## II. The CMO, the Amended Complaint, and Motion for Leave to Amend

Following remand from the Sixth Circuit, the court held an initial case management conference, entered an Initial Case Management Order ("CMO") (Docket No. 137) and set the case for trial (Docket No. 138). In the CMO, the court set the following deadlines: July 1, 2014 to file motions for leave to amend, November 1, 2014 to complete fact discovery, December 1,

---

[2] The denial of qualified immunity permitted Mason to file an interlocutory appeal on November 29, 2012. (Docket No. 19.) On October 22, 2013, the Sixth Circuit issued its opinion, and the mandate issued on November 13, 2013. (Docket Nos. 125 and 126.)

[3] One additional defendant, the Metropolitan Nashville Hospital Authority d/b/a Nashville General Hospital and Nashville General Hospital at Meharry, was dismissed by stipulation following the Sixth Circuit appeal. (Docket No. 139.).

2014 for the plaintiff to serve expert disclosures, February 1, 2015 for the defendants to serve their expert disclosures, and April 15, 2015 for dispositive motions. The court also set a trial date of August 25, 2015, which the parties expect will last 7 to 10 days.

On April 2, 2014, the plaintiff filed an Amended Complaint with leave of court. (Docket No. 143.) In addition to claims against the Individual DCSO Officers, the Amended Complaint asserted claims against Metro Nashville for supervisory liability under § 1983, for vicarious liability under the Tennessee Governmental Tort Liability Act ("TGTLA"), and for vicarious liability under Tenn. Code Ann. § 8-8-302, commonly referred to as the "Sheriff's Statute."

On April 8, 2014, Metro Nashville filed a Motion to Dismiss the Amended Complaint under Rule 12(b)(6). (Docket No. 144.) On August 4, 2014, the court granted the motion. (Docket No. 157.) The court dismissed the TGTLA claim with prejudice based on sovereign immunity, dismissed the § 1983 claim without prejudice for failure to state a claim, and dismissed the Sheriff's Statute claim without prejudice for failure to state a claim.

On August 5, 2014 (the next day), the plaintiff sought leave to file a Second Amended Complaint that would have (1) included amended allegations supporting a Sheriff's Statute claim, and (2) reasserted a claim against DCSO Sheriff Daron Hall, who had been dismissed from the case on November 19, 2012 (nearly two years earlier). While the motion was pending, counsel for Metro Nashville did not participate in the plaintiff's August 14, 2014 deposition, but did participate in depositions of the Individual DCSO Officers on August 20 and defended the depositions of multiple Metro Nashville non-party corporate representatives on August 21. (*See* Docket No. 173, Ex. A.)

On October 8, 2014, the court granted in part and denied in part the plaintiff's Motion for Leave to Amend. (Docket No. 168.) The proposed Sheriff's Statute claim against Metro

4

Nashville was allowed to proceed, but the proposed claim against Sheriff Hall was held untimely and, therefore, futile. Accordingly, the court permitted the plaintiff until October 15, 2014 to file a Second Amended Complaint that would include only the proposed Sheriff Statute claim.

Despite the court's order, the plaintiff did not file an amended pleading, and the October 15, 2014 deadline passed. As it had been since the court's August 4, 2014 Order dismissing the Amended Complaint allegations against it, Metro Nashville remained a non-party to the case.

The remaining parties – specifically, the plaintiff and the Individual DCSO Officers – continued to conduct discovery. Although the plaintiff continued to notify Metro Nashville of the deposition dates, Metro Nashville did not participate in any depositions after October 15, 2014, including depositions of the plaintiff's mother and seven non-party witnesses (treating physician Dr. Richard Fremont, several other NGH personnel, and medical examiner Dr. Adele Lewis). Fact discovery closed on November 1, 2014.

### III. The Plaintiff's Rule 26 Expert Disclosures

On November 30, 2014, the plaintiff served its expert disclosures, in which it disclosed Melvin Tucker as a retained expert witness and Drs. Fremont (treating physician) and Lewis (medical examiner) as non-retained individuals who would likely provide expert testimony at trial. With respect to Mr. Tucker, the plaintiff served an expert report (the "Tucker Report") in which Mr. Tucker asserts three opinions: (1) the force that the Individual DCSO Officers used was excessive; (2) the DCSO's internal affairs post-incident investigation was inadequate; and (3) Metro Nashville had failed to train the Individual DCSO Officers adequately before the incident occurred. Mr. Tucker's first opinion relates to the potential liability of the Individual DCSO Officers for using excessive force. Mr. Tucker's second and third opinions relate to

5

*Metro Nashville*'s potential supervisory liability. The Tucker Report is dated November 19, 2014.

The fact that the Tucker Report contains opinions related to Metro Nashville is remarkable for at least three reasons. First, Metro Nashville was not a party to the case when the plaintiff served the report on November 30, 2014. Second, even if the plaintiff was laboring under the mistaken assumption that the proposed Second Amended Complaint was already operative (as her counsel claims), that fact does not explain why the Tucker Report includes opinions supporting a supervisory liability claim against Metro Nashville. Subject to the court's August 4, 2014 ruling, the Second Amended Complaint would have included only a *vicarious liability* claim under the Sheriff's Statute. That claim turns on a discrete issue unrelated to the adequacy of the officers' training or the post-accident investigation: at the time of the incident, were the Individual DCSO Officers "deputies appointed by the Sheriff" within the meaning of the statute? Third, the inclusion of opinions concerning Metro Nashville in the Tucker Report indicates that the plaintiff had asked Mr. Tucker to formulate opinions supporting a § 1983 liability claim against Metro Nashville well in advance of the December 1, 2014 expert disclosure deadline. Mr. Tucker's report necessarily was based on information procured before the fact discovery deadline of November 1, 2014; indeed, the opinions concerning excessive force and the DCSO investigation appear to rely on deposition testimony of the Individual DCSO Officers (taken on August 20, 2014) and records furnished by Metro Nashville at some point soon thereafter. In addition, the Tucker Report is dated November 19, 2014, meaning that Mr. Tucker must have been working with the plaintiff well in advance of that date to review records and prepare a detailed written report.

6

## IV. Untimely Second Amended Complaint and the Motion for Leave to File Third Amended Complaint

On December 1, 2014, 47 days after the court-ordered deadline of October 15, 2014, the plaintiff filed a Second Amended Complaint without seeking leave of court. (Docket No. 170.) The Second Amended Complaint purports to reassert the Sheriff's Statute claim against Metro Nashville.

On December 5, 2014, just four days after filing its untimely Second Amended Complaint, the plaintiff filed the instant Motion for Leave to File Third Amended Complaint. (Docket No. 171.) The Third Amended Complaint would amend the Second Amended Complaint to reassert a § 1983 liability claim against Metro Nashville based on two theories: (1) a failure to train; and (2) a policy of ratification of unconstitutional conduct.

## V. The Pending Motions

The court is faced with two motions addressing distinct issues. First, Metro Nashville has moved the court to strike the Second Amended Complaint. Second, Metro Nashville argues that the court should deny the plaintiff's request for leave to file a Third Amended Complaint on multiple grounds.

## RULE 15(a) AND RULE 16 STANDARDS

Normally, motions for leave to amend are reviewed under the deferential standard of Federal Rule of Civil Procedure 15(a)(2); that is, the court "should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2). Under this standard, the district court has substantial discretion and can deny the motion for leave "based on undue delay, bad faith or dilatory motive or futility of amendment." *Pedreira v. Ky. Baptist Homes for Children*, 579 F.3d 722, 729 (6th Cir. 2009) (internal quotation omitted). The court may also deny such a motion due to the

"repeated failure [of the moving party] to cure deficiencies" or because of "undue prejudice" to the non-moving party; but, in general, the mandate that leave is to be "freely given . . . is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, a different standard applies when a proposed amendment is so late that it would require the modification of a Rule 16 scheduling order." *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010). Indeed, Fed. R. Civ. P. 16 permits the modification of a scheduling order only for "good cause" and with the court's consent." Fed. R. Civ. P. 16(b)(4). The heightened standard "ensure[s] that at some point both the parties and the pleadings will be fixed," only subject to modification based upon a showing of good cause. *Leffew v. Ford Motor Co.*, 258 F. App'x 772, 777 (6th Cir. 2007); *Korn*, 382 F. App'x at 449 (citing *Leary v. Daeschner*, 349 F.3d 888, 905-09 (6th Cir. 2003)).

Good cause is measured by the movant's "diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625-26 (6th Cir. 2002) (internal quotation omitted). In considering "good cause," the court must also consider – as one "consideration that informs" the analysis – whether the defendant would be prejudiced by the amendment and the modification of the scheduling order. *Korn*, 382 F. App'x at 450. Even if no prejudice is evident, the plaintiff still "must [] explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order." *Korn*, 382 F. App'x at 450. Where the plaintiff's explanation for the delay is simply insufficient or not credible, it is appropriate for the court to deny the motion for leave to amend. *Id.*; *Commerce Benefits Grp. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009). If the plaintiff establishes "good cause," then the court proceeds to the more permissive Rule 15(a)(2) analysis. *Commerce Benefits Grp.*, 326 F. App'x at 376.

## ANALYSIS

### I. Motion to Strike the Second Amended Complaint

As a starting point, the plaintiff filed her Second Amended Complaint in violation of Rule 15(a) and the CMO. Under Rule 15(a)(2), the plaintiff may only file an amended pleading with leave of court or with the other party's consent. Furthermore, because the CMO set a July 1, 2014 deadline for seeking leave to amend, the plaintiff was required to seek leave to file the Second Amended Complaint out of time. The court originally afforded the plaintiff a one-week window to file a Second Amended Complaint that would have brought Metro Nashville back into the case on a single vicarious liability claim under the Sheriff's Statute. The plaintiff could have filed a Second Amended Complaint within that deadline without further leave of court and without showing additional good cause for the amendment. The plaintiff did not do so. After the plaintiff missed the court's deadline, the plaintiff was required (1) to seek leave of court to amend the Amended Complaint under Rule 15(a)(2), and (2) was required to demonstrate good cause to do so under Rule 16, because the amendment would have required a modification to case deadlines established by court order.

Instead of seeking leave and attempting to justify the delay, as the rules require, the plaintiff simply filed the Second Amended Complaint out of time – 47 days after the court-ordered deadline, 30 days after the close of fact discovery, and well after Metro Nashville justifiably had ceased participating in depositions in the case. If the court were to permit Metro Nashville back into the case, the court would need to reset the fact discovery deadline to permit Metro Nashville an opportunity to retake depositions or take any other necessary discovery to defend itself, and the court would likely need to reset other case management deadlines as well. Under these circumstances, the federal rules require the court to strike the Second Amended

Complaint, which was filed without any procedural basis and in violation of the CMO and court deadlines. The court will therefore grant the Motion to Strike and will treat the Second Amended Complaint (Docket No. 170) as a legal nullity.

## II. Request for Leave to File Third Amended Complaint

As to the request to file a Third Amended Complaint, the analysis proceeds under the traditional Rule 16 and Rule 15(a)(2) framework. Effectively, the amendments would reassert the two claims that the court had previously dismissed without prejudice on August 4, 2014: (1) the Sheriff's Statute claim; and (2) the § 1983 supervisory liability claim. The court will treat the request to reassert the Sheriff's Statute claim as effectively seeking the requisite leave of court that the plaintiff should have requested before unilaterally filing the Second Amended Complaint at Docket No. 170. The court's analysis relative to each of the two proposed claims is distinct.

### A. The § 1983 Supervisory Liability Claim

As it relates to the § 1983 supervisory liability claim, the plaintiff has not shown good cause for the timing of this request, which is unjustified and would be highly prejudicial to Metro Nashville. With respect to the proposed § 1983 claim, the plaintiff claims that she was not able to assert the claim before December 5, 2014, based on a delay in receiving complete deposition transcripts and other evidence. The proposed § 1983 amendments appear to be based primarily on August 20 and 21, 2014 deposition testimony from the individual defendant officers and Metro Nashville Rule 30(b)(6) corporate representatives. For example, in support of her Motion for Leave to Amend, the plaintiff attaches multiple deposition transcripts that allegedly support the proposed § 1983 claims. Those depositions include only transcripts from the August 20, 2014 depositions of DCSO Officers Forster and Davidson and two August 21, 2014 depositions of Metro Nashville Rule 30(b)(6) representatives. Even allowing for some additional time to

receive transcripts and to review any documents produced in connection with those depositions, the plaintiffs were aware of the basic factual predicates for their § 1983 claim against Metro Nashville well in advance of December 5, 2014, the date on which they requested leave to amend to assert the § 1983 supervisory liability claim.

The plaintiff's Rule 26 expert disclosure also reflects undue delay and dilatory motive. Dr. Tucker's report is dated November 19, 2014. Plaintiff's counsel retained Mr. Tucker to offer opinions concerning Metro Nashville's potential supervisory liability and provided Mr. Tucker information necessary to form his opinion in advance of November 19, 2014. The plaintiff plainly decided to reassert the § 1983 claims against Metro Nashville at least several weeks in advance of December 4, 2014 (and likely months in advance) without seeking leave to amend to assert the claim.

In other words, the plaintiff gathered evidence supporting the amended § 1983 allegations in late August 2014, retained and prepared her expert before November 19, 2014 to opine that Metro Nashville inadequately trained the officers and inadequately investigated Minick's death, received Dr. Tucker's conclusions on November 19, 2014, disclosed Mr. Tucker's opinions in a sophisticated expert report to the remaining defendants on November 30, 2014 (11 days after Tucker had completed his report), and *then* sought leave to add the § 1983 claims against Metro Nashville to the case five days later. This sequence of events belies the notion that the plaintiff expeditiously sought leave to assert the § 1983 claims; instead, it amounts to "sandbagging" Metro Nashville and then seeking forgiveness (rather than permission) from the court to assert the claim.

Granting the plaintiff leave to amend at this stage would substantially prejudice Metro Nashville. Metro Nashville understandably did not participate in numerous depositions after

11

October 15, 2014 that are relevant to the proposed § 1983 claim, including the plaintiff's deposition and the depositions of numerous third-party witnesses: a treating physician, several MGH personnel witnesses, and the medical examiner. The fact discovery deadline has now passed, thereby precluding Metro Nashville from obtaining the discovery it would need to adequately defend itself against the § 1983 claims without court intervention, including re-opening depositions and allowing for further disclosures and written discovery. Also, as a non-party and with no pending request to assert a § 1983 claim, Metro Nashville had no incentive to prepare a defense to a § 1983 supervisory liability claim to which it was not subject. If leave to amend were granted now, its attorneys would need to expend time and effort to re-familiarize themselves with the case as it relates to potential supervisory liability. Furthermore, the impact of re-opening discovery would not just fall on the parties to the case, but also on numerous third-party medical providers at NGH and on a county medical examiner, whose depositions Metro Nashville might seek to re-open.

Given the unjustified timing of the plaintiff's request for leave, the court is under no obligation to reset the case management deadlines in an effort to cure the multiple forms of manifest prejudice to Metro Nashville that would result from granting leave at this late stage.[4]

In sum, the court finds that (1) the plaintiff has not adequately explained why she waited until December 5, 2014 to seek leave to amend to assert the § 1983 claim, (2) the timing of the plaintiff's request reflects undue delay, (3) the timing of the plaintiff's request suggests dilatory

---

[4] During the court's conference with the parties on December 12, 2014, the court advised plaintiff's counsel that the plaintiff could have sought to alleviate the potential prejudice by notifying Metro Nashville – in advance of the third-party depositions – that the plaintiff would be moving for leave to assert the § 1983 claim in the near future. Instead, the plaintiff kept this intention to herself until after the "die was cast."

12

motive, and (4) it would be highly prejudicial to Metro Nashville to grant the proposed amendment to add a § 1983 claim at this stage. Under the circumstances, the plaintiff has not shown "good cause" for adding that claim at this stage; nor, for that matter, would she have met the less stringent Rule 15(a) standard in light of these considerations. Accordingly, the court will deny the request for leave to amend to assert the § 1983 claim.[5]

### B. Request for Leave to Assert Sheriff's Statute Claim

As to the request for leave to add a Sheriff's Statute claim, the analysis is different. The court permitted the claim to proceed in its October 8, 2014 Order, and it appears that plaintiff's counsel simply failed to read the court's order to file a Second Amended Complaint by October 15, 2014. The Sheriff's Statute claim implicates a vicarious liability issue that is unrelated to the adequacy of the officers' training or the post-accident investigation: namely, at the time of the incident, were the DCSO officers acting as "deputies appointed by the sheriff," within the meaning of the statute? The facts relating to the claim are discrete and, presumably, much more

---

[5] Even if the court were inclined to the excuse the timing of the proposed amendment, the request to add a failure to train claim also faces a futility problem. The proposed allegations relate only to the incidents at issue in this case and do not include any allegation that Metro Nashville ignored instances of past abuse that placed Metro Nashville "clearly on notice that [its] training . . . was deficient and likely to cause injury." *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008); *Marcilis v. Twp of Redford*, 693 F.3d 589, 605 (6th Cir. 2012); *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *see also City of Canton v. Harris*, 489, U.S. 378, 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."); *see also Okolo v. Metro Gov't of Nashville*, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) (dismissing § 1983 claim, where plaintiff "pleads no facts and cites no prior instances of unconstitutional conduct to support his conclusory allegation that Metro was aware of a history of illegal arrests, much less that they ignored them"); *Birgs v. City of Memphis*, 686 F. Supp. 2d. 776, 780 (W.D. Tenn. 2010) (dismissing § 1983 claim, where plaintiff had pleaded "no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers in the Memphis Police Department").

limited in scope than facts relating to Metro Nashville's potential supervisory liability. Most importantly, the third-party NGH medical providers, the medical examiner, the plaintiff, and the plaintiff's mother are highly unlikely to know factual information relating to the Sheriff's Statute claim. In other words, none of the depositions in which Metro Nashville declined to participate (both before and after October 15, 2014) likely had any bearing on the Sheriff's Statute claim. Thus, Metro Nashville's failure to participate in those depositions was not prejudicial to its potential defense of the Sheriff's Statute claim, and, as a consequence, it is highly unlikely that any of those depositions would need to be re-opened after adding the claim.

The Sheriff's Statute claim also does not implicate expert testimony, meaning that there is no risk that re-opening limited discovery on the claim would impact the remaining expert deadlines. Furthermore, additional information concerning the Sheriff's Statute claim is likely within Metro Nashville's control in the first place: Metro Nashville can address the issue internally with Sheriff Hall, the DCSO's office generally, the individual officers, and other Metro Nashville officers or employees who may have relevant information concerning the claim. In fact, Metro Nashville has already researched the matter internally and presented evidence attempting to rebut the plaintiff's assertion that the officers are "deputies" under the Sheriff's Statute. Specifically, on August 19, 2014, in support of its opposition to the plaintiff's original motion seeking leave to add the Sheriff's Statute claim to the case, Metro Nashville filed the Declaration of Constance Taite, an administrative services manager for the DCSO, who averred that the Individual DCSO Officers "are not Deputy Sheriffs." (Docket No. 161 ¶ 5.)

The dispositive motion deadline is not until April 15, 2015. To the extent that the Sheriff"'s Statute claim requires additional discovery by Metro Nashville or, at minimum,

14

sufficient time to address the matter internally and to prepare its defense, there is ample time to do so without impacting the other case management deadlines or the trial date.

These considerations also lend credence to plaintiff counsel's representation that (1) it made an honest mistake in failing to meet the October 15, 2014 filing deadline, and (2) it has simply sought to rectify that error by reasserting the claim now. There was no strategic reason to delay bringing the claim and no apparent reason to miss the court's previous deadline. The court therefore accepts the plaintiff's contention that she sought to reassert this claim as soon as she realized her mistake, in a manner designed to have a negligible impact on the CMO deadlines and to cause minimal, if any, prejudice to Metro Nashville.

Accordingly, the court finds good cause for the amendment under Rule 16 and, for essentially the same reasons, will permit the amendment to a Sheriff's Statute claim under Rule 15(a).[6]

**C. Filing an Amended Pleading**

The court will direct the plaintiff to file an amended pleading that adds a Sheriff's Statute claim and associated allegations (but not a § 1983 claim) by January 5, 2014.[7] This should be a complete pleading, not a recitation only of the "additional" paragraphs. If the plaintiff fails to

---

[6] Incidentally, Metro Nashville previously argued that, in lieu of dismissal, the court should either certify multiple questions concerning the Sheriff's Statute to the Tennessee Supreme Court or decline to exercise supplemental jurisdiction over the claim under 28 U.S.C. § 1367(c). As expressed in the court's October 8, 2014 Memorandum, the court found both of these requests to be premature but indicated that it would revisit these issues upon motion at an appropriate stage in the case. The same considerations apply to the reassertion of the Sheriff's Statute claim here.

[7] For the sake of clarity, the pleading should be styled as a "Revised Second Amended Complaint" or words to similar effect.

comply with this filing deadline, Metro Nashville will remain a non-party to this case, and no further requests to reassert the Sheriff's Statute claim will be permitted.

The court will also direct the plaintiff and Metro Nashville to confer regarding revised deadlines to accommodate Metro Nashville's defense of the Sheriff's Statute claim (without impacting the other CMO deadlines), if any revisions are necessary.

## CONCLUSION

The Motion to Strike will be granted, the Second Amended Complaint will be stricken, the Motion for Leave to Amend will be granted in part and denied in part, the plaintiff will be permitted to amend the Amended Complaint to assert a Sheriff's Statute claim against Metro Nashville, and the parties will confer in compliance with the guidance set forth herein.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge