UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HEATHER MINICK, individually and as surviving spouse of MICHAEL MINICK, and as co-administrator of the Estate of Michael Minick,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, CHRISTOPHER FOSTER, individually and in his official capacity, MATTHEW BARSHAW, individually and his official capacity; JEFFREY DAVIDSON, individually and his official capacity; MORRIS CRAVEN, individually and in his official capacity,<br><br>    Defendants. | Case No. 3:12-cv-0524<br>Judge Aleta A. Trauger |

## **MEMORANDUM & ORDER**

Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro Nashville") has filed a Motion to Dismiss, or in the Alternative, to Certify Questions to the Tennessee Supreme Court (Docket No. 181), to which the plaintiff has filed a Response in opposition (Docket No. 186), and Metro Nashville has filed a Reply (Docket No. 189).

This is the fourth round of motion practice related to the vicarious liability claim against Metro Nashville under the Sheriff's Statute, Tenn. Code Ann. § 8-8-302. (*See* Docket Nos. 156, 167, and 176.) Metro Nashville now moves to dismiss the Sheriff's Statute claim on jurisdictional grounds or, in the alternative, to certify two questions to the Tennessee Supreme

1

Court.¹ In support of its Reply, Metro Nashville has introduced additional factual materials, including a copy of an Intergovernmental Agreement between Metro Nashville and the Nashville General Hospital ("NGH") for security services, personnel and training records related to the four defendant officers, and a copy of a Letter Agreement between Metro Nashville and the Davidson County Sheriff's Office ("DCSO") in effect when the underlying incident occurred. In its Reply, Metro Nashville argues, for the first time, that construction of the damages recoverable under the sheriff's bond also presents at least two novel or complex issues of Tennessee law.²

Metro Nashville's motion does not seek a merits determination from this court; instead, it argues that a Tennessee court – not this court – should decide the merits of the Sheriff's Statute claim. Metro Nashville contends that adjudicating the Sheriff's Statute claim requires the resolution of novel or complex issues of Tennessee law that a Tennessee court should resolve in the first instance, particularly where the issues ultimately involve potential waiver of the county's governmental immunity. Metro Nashville urges the court to decline to exercise supplemental jurisdiction over the Sheriff's Statute claim under 28 U.S.C. § 1367(c). By contrast, the plaintiff argues that the law and the facts are sufficiently clear to permit this court to (a) retain jurisdiction over the Sheriff's Statute claim and (b) make a merits ruling at an appropriate time, without the need to certify any questions to the Tennessee Supreme Court. The

---

¹ The two proposed questions are as follows: "(1) What, if anything, is the legal distinction between a jailer/corrections officer and a Deputy Sheriff for purposes of a county's liability under Tennessee law? (2) Can an employee of the Davidson County Sheriff's Office who was not appointed by a Court or any formal tribunal, and in some instances is not even a civil service employee, be a "Deputy Sheriff" under Tenn. Code Ann. § 8-8-302?"

² Specifically, Metro Nashville contends that it is unclear (1) whether the amount of the bond is the bond in place at the time of the incident ($50,000) or at the time of a judgment (currently $100,000), and (2) whether the plaintiff may recover the amount of the bond once relative to the entire incident one relative to each officer defendant (*i.e.*, four times).

2

briefs concerning Metro Nashville's motion contain the parties' most cogent and comprehensive discussions of the Sheriff's Statute to date.

Briefly, the sheriff is charged with maintaining the county jail, a responsibility he may discharge "personally, or by deputy or by jailer." Tenn. Code Ann. § 8-8-201(a)(3). Here, the plaintiff's brief outlines the statutory distinctions between a "deputy" and "jailer." For instance, on pain of criminal liability, deputies must take a special oath of office before assuming the responsibility of a deputy (Tenn. Code. Ann. §§ 8-18-112 to 113), and deputies may thereafter discharge the sheriff's numerous duties, including executing and returning process, levying writs, and overseeing the jail. By contrast, a jailer's responsibilities are limited to overseeing the jail, the jailer need not take the special oath of office required of deputies under Tenn. Code Ann. § 8-18-112, and a jailer must only meet specific qualifications set forth in Tenn. Code Ann. § 41-4-144. The plaintiff's brief outlines the procedures by which a sheriff may employ deputies, a process that involves either an agreement between the sheriff and the county concerning the number of "deputies and assistants" or an adversary proceeding by the sheriff against the county if they cannot agree on the right number of employees. Tenn. Code Ann. 8-20-101.

The Tennessee Code allocates civil responsibility for injuries caused by jailers and by deputies: for injuries caused by jailers, a *sheriff* is "civilly responsible" (Tenn. Code Ann. § 41-4-101); for injuries caused by "deputies appointed by the sheriff," the *county* is liable, provided that (a) the deputies were acting by "virtue of or under color of the office" and (b) the injury-causing actions were non-negligent. Tenn. Code Ann. § 8-8-302; *see Jenkins v. Loudon Cnty.*,

736 S.W.2d 603 (Tenn. 1987), *abrogated on other grounds in Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2001).[3]

Here, the plaintiff alleges that the four DSCO Officers who injured Minick were deputies acting under color of office at the time of the incident. Thus, the plaintiff alleges that, under the Sheriff's Statute, Metro Nashville is liable for any injuries caused by the officers' non-negligent conduct. Metro Nashville's position seems to be that, at the time of the incident, the four officers were in fact "jailers," for whose conduct only the sheriff (not the county) is "civilly responsible."[4]

At deposition, each officer testified that Sheriff Hall administered an oath of office to him (presumably the oath for a deputy set forth in Tenn. Code Ann. § 8-8-112) and that the DSCO gave him an official badge identifying him as a "Deputy Sheriff."[5] Notwithstanding these indicia of deputization, Metro Nashville argues that the DCSO officers are not "deputies" under

---

[3] *Jenkins* addressed the interaction between the Sheriff's Statute and the Tennessee Governmental Tort Liability Act ("TGTLA"), concluding that, following passage of the TGTLA, the Sheriff's Statute waived the county's immunity only as to non-negligent actions.

[4] Late in this litigation, the plaintiff sought leave to assert a vicarious liability claim against Davidson County Sheriff Daron Hall under Tenn. Code Ann. § 41-4-101, alleging that Sheriff Hall was responsible for the officers' actions to the extent that those officers were acting as "jailers" at the time of the incident. The court denied the plaintiff's request because the claim was barred by the statute of limitations.

[5] Officer Foster's testimony is representative: "[W]hen you were hired fully, what was your job title? A: Just a deputy. . . . Q: [W]ere you sworn in as a deputy sheriff? A: Yes. Q: Were you issued a badge? A: Yes. . . . Q: [D]escribe the badge for me. A. It's like a – pretty much like a regular deputy badge with the stars, like a six-pointed star. Q: [] Are there any words on the badge? A: Yes. Davidson County Sheriff's Office, you know, deputy. Q: [] And were you issued that badge at that ceremony when you were sworn in? A: Yes. Q: Did the sheriff himself conduct the ceremony? A: Yes, he was present. Q: Did he administer the oath to you? A: Yes.) (Docket No. 175, Ex. 2, Foster Deposition Transcript at 12:10-12 and 13:12 to 14:6.)

4

the Sheriff's Statute because the Letter of Agreement between the county and Sheriff Hall only identifies one class of employee as a "deputy" (the "Chief Deputy"), whereas the four officers fall under the line item request for 425 "correctional officers."[6] As the court understands the argument, Metro Nashville argues that a Tennessee court – not this court – should decide whether to classify "correctional officers" as "deputies" (rather than as "jailers") under the Sheriff's Statute.

Metro Nashville also raises a separate argument in its Reply. In support of its Reply, Metro Nashville has produced a copy of an Intergovernmental Agreement between NGH and the DSCO that was in effect at the time of the incident, whereby the DSCO had agreed to provide security at NGH facilities during the time frame at issue. Metro Nashville represents that three of the four officer defendants were providing hospital security at NGH under the terms of this agreement and that, therefore, those officers "were certainly not 'deputies' at the time of the incident." (Docket No. 189 at p. 5.) Metro Nashville does not explain why this conclusion should follow from the fact of the Intergovernmental Agreement, which does not, by its own terms, appear to sever the employment relationship between the officers and the DSCO.[7]

Notably, Metro Nashville has not explained why Sheriff Hall would have administered an oath and delivered "Sheriff's Deputy" badges to the four officers in this lawsuit if he was not, in fact, appointing them as his deputies.[8] The court is increasingly convinced that Metro

---

[6] Thus, it appears that the sheriff employed the officers in this case by agreement under Tenn. Code Ann. § 8-20-101, without the need for an adversary proceeding against the county.

[7] Because the issue was raised for the first time in Metro's Nashville Reply, the court does not have the benefit of a response from the plaintiff concerning the potential effect of the Intergovernmental Agreement on the court's analysis.

[8] The record contains no representations by Sheriff Hall.

5

Nashville's legal position is incorrect, that the issue may involve an issue of fact rather than an issue of law, or that, at a minimum, Metro Nashville should be estopped from taking the position that these four officers were not "deputies."

In light of these considerations, the court finds no compelling reason to relinquish jurisdiction over the Sheriff's Statute claim under 28 U.S.C. § 1367(c) or to certify a question to the Tennessee Supreme Court at this time. With respect to the jurisdictional issue, the court may be able to resolve the county's potential liability for the officers' conduct (if not the county's total monetary exposure) on the merits. Also, at least at this stage, the court is concerned that it would not serve the interests of judicial economy and fairness to create a serious risk of parallel litigation and potentially inconsistent verdicts as to the merits of the officers' underlying conduct. As to the proposed certified questions, the first question is vague and may be unnecessary in light of the facts of the case; as to the second question, it is unclear to the court what meaningful distinctions Metro Nashville is attempting to draw with respect to civil service protections and the appointment of deputies. Finally, although Metro Nashville raises a potentially valid issue concerning the scope of liability under the sheriff's bond, the issue was raised for the first time in Metro Nashville's Reply, and the court sees no reason why it could not address that issue at a later stage, with benefit of a response from the plaintiff.

For these reasons, Metro Nashville's motion is **DENIED**. Perhaps in conjunction with briefing the merits of the Sheriff's Statute claim in a Rule 56 motion, Metro Nashville may seek to renew its request to dismiss the claim or to certify certain (more focused) questions to the Tennessee Supreme Court, although it is now less concerned that either step will be necessary in this case.

It is so **ORDERED**.

Enter this 25th day of February 2015.

_____
ALETA A. TRAUGER
United States District Judge